Filed 4/11/22  P. v. Shaw CA2/7
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>IRVIN RANDOLPH SHAW,<br><br>      Defendant and Appellant. | B306212<br><br>(Los Angeles County<br>Super. Ct. No. MA054450) |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa Mangay Chung, Judge.  Reversed with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Daniel C. Chang and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

**INTRODUCTION**

Irvin Randolph Shaw appeals from the superior court's order denying his petition under Penal Code section 1170.95.[1]  In our prior opinion we affirmed the superior court's ruling, after which Shaw successfully petitioned for review by the Supreme Court.  The Supreme Court transferred the case to us with directions to vacate our prior opinion and reconsider our decision in light of Senate Bill No. 775 (2020-2021 Reg. Sess.) (Stats. 2021, ch. 551, § 2) and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).  The People now concede, and we agree, the superior court erred in summarily denying Shaw's petition without appointing counsel and receiving briefing.  Because we also agree with Shaw the error was not harmless, we vacate our prior opinion, reverse the superior court's order denying Shaw's petition, and direct the trial court to appoint counsel for Shaw, issue an order to show cause, and conduct further proceedings under section 1170.95, subdivision (d).

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *A Jury Convicts Shaw on Two Counts of Attempted Murder, and We Affirm*

In March 2010 Irvin Shaw drove his SUV in front of a driveway and stopped, blocking a car occupied by several people who were saying goodbye to other people in the driveway.  From the SUV's passenger seat, Shaw's brother Emanuel fired multiple shots at the car with a handgun, after which Shaw drove away.

---

[1]    Undesignated statutory references are to the Penal Code.

At least one person in the car was wounded, but no one was killed, and Shaw and Emanuel were arrested.

Among other charges against the brothers, in connection with the driveway shooting the People charged both brothers with four counts of attempted willful, deliberate, and premeditated murder (§§ 664, 187, subd. (a)) and one count of discharging a firearm at an occupied motor vehicle (§ 246). For these counts the People alleged, among other things, Emanuel personally and intentionally discharged a firearm causing great bodily injury, within the meaning of section 12022.53, subdivision (d).

The brothers were tried together, and a jury convicted both on two counts of attempted willful, deliberate, and premeditated murder and the count of shooting at an occupied motor vehicle. The jury also found, as alleged for these counts, Emanuel personally discharged a firearm.

On the attempted murder counts the trial court sentenced Shaw to two consecutive terms of life in prison. The court sentenced Shaw to additional terms for other offenses the jury found he committed. We affirmed the judgment. (*People v. Shaw, et al.* (Nov. 18, 2013, B239817) [nonpub. opn.].)

B.    *The Superior Court Denies a Petition by Shaw Under Section 1170.95, and We Affirm*

In 2019 Shaw filed a petition for resentencing under section 1170.95 and asked the superior court to appoint counsel to represent him. Without appointing counsel, the court summarily denied the petition. The court found Shaw failed to make a prima facie showing he was entitled to relief under section 1170.95 because, at the time, the statute provided relief only to defendants convicted of first or second degree murder, not attempted murder.

3

Shaw filed this appeal, arguing the superior court erred in summarily denying his petition and not appointing counsel because section 1170.95 applies to convictions for attempted murder. He also argued that the court's failure to appoint counsel violated his constitutional rights to due process and assistance of counsel and that the summary denial of his petition violated his procedural due process rights.

We affirmed the superior court's order denying Shaw's petition. (*People v. Shaw* (May 13, 2021, B306212) [nonpub. opn.].) We held Shaw failed to make the prima facie showing required by section 1170.95 because the statute did not apply to convictions for attempted murder. Therefore, we concluded, the superior court did not err in summarily denying his petition or in not appointing counsel. We also concluded the superior court did not violate Shaw's rights to due process, assistance of counsel, or procedural due process.

C.  *The Supreme Court Grants Review and Transfers the Cause*

The Supreme Court granted Shaw's petition for review and later transferred the cause to us with directions to vacate our decision and reconsider Shaw's appeal in light of amendments to section 1170.95 by Senate Bill No. 775, effective January 1, 2022, and in light of *Lewis, supra,* 11 Cal.5th 952. Both Shaw and the People submitted supplemental briefing.

## DISCUSSION

A. *Senate Bill No. 1437, Senate Bill No. 775, and the Section 1170.95 Petition Procedure*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015, § 4) "substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder [citation] and significantly narrowing the felony-murder exception to the malice requirement for murder." (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 862; see §§ 188, subd. (a)(3), 189, subd. (e).) Regarding the natural and probable consequences doctrine, the Legislature added section 188, subdivision (a)(3), which provides: "Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (See *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *Mancilla,* at p. 862.)

Senate Bill No. 1437 also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of Senate Bill No. 1437's changes to the definitions of the crime. (See *Lewis*, *supra*, 11 Cal.5th at p. 957; *Gentile*, *supra*, 10 Cal.5th at p. 843.) As amended by Senate Bill No. 775, effective January 1, 2022, these changes to the law now apply also to attempted murder and voluntary manslaughter. (See § 1170.95, subds. (a), (g).)

As the Supreme Court clarified in *Lewis*, *supra*, 11 Cal.5th at pages 962-963, and amendments by Senate Bill No. 775 make explicit, if a section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief, the court must appoint counsel to represent the petitioner if requested. (§ 1170.95, subds. (b)(1)(A), (b)(3).) The prosecutor must then file a response to the petition, to which the petitioner may file a reply, and after which the court must hold a hearing to determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c).)

The prima facie inquiry under section 1170.95, subdivision (c), is "limited." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "'"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."'" (*Ibid.*) "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid.*)

If the petitioner has made a prima facie showing under section 1170.95, subdivision (c), the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder or manslaughter conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At this hearing the prosecutor has the burden of proving, "beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (d)(3).)

B. *The Superior Court Prejudicially Erred in Summarily Denying Shaw's Petition Without Appointing Counsel*

The People now concede, and we agree, that Shaw's petition under section 1170.95 contained all the required information and that therefore the superior court erred in summarily denying his petition without appointing counsel and receiving briefing. (See *Lewis*, *supra*, 11 Cal.5th at p. 963.) In *Lewis* the Supreme Court held such an error by the superior court is subject to harmless error analysis under the standard of *People v. Watson* (1956) 46 Cal.2d 818. (*Lewis*, at pp. 957-958, 973.) "More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing."'" (*Id.* at p. 974.) The People argue the court's error here was harmless because the record of conviction establishes Shaw is ineligible for relief as a matter of law. (See *People v. Farfan* (2021) 71 Cal.App.5th 942, 956 [error in failing to appoint counsel and receive briefing on a section 1170.95 petition was harmless because the record of conviction established petitioner was ineligible for relief as a matter of law].) We agree with Shaw the error was not harmless.

In his petition Shaw alleged he was eligible for relief under section 1170.95 because he was convicted of attempted murder under the natural and probable consequences doctrine and could not now be convicted of that crime because of the changes to sections 188 and 189. Had the superior court appointed counsel, received briefing, and proceeded in proper fashion to the initial inquiry under section 1170.95, subdivision (c), the court would have had to take Shaw's allegations as true in determining whether to issue an order to show cause and hold an evidentiary hearing, unless the record of conviction refuted those allegations.

(See *Lewis*, *supra*, 11 Cal.5th at p. 971.) Shaw argues the record of conviction in fact supported his allegations because it shows the court instructed the jury on the natural and probable consequences doctrine as a basis for attempted murder liability.

Here's what the record of conviction discloses: The trial court instructed on general principles of aiding and abetting with CALCRIM No. 400: "A person may be guilty of a crime in two ways. One, he may have directly committed the crime. I will call that person the perpetrator. Two, he may have aided and abetted a perpetrator who directly committed the crime. A person is guilty of a crime whether he committed it personally or aided and abetted the perpetrator who committed it. Under some specific circumstances, if the evidence establishes aiding and abetting of one crime, a person may also be found guilty of other crimes that occurred during the commission of the first crime."

After instructing the jury on the elements of aiding and abetting an intended crime (CALCRIM No. 401), the trial court instructed on the natural and probable consequences doctrine with CALCRIM No. 403: "Before you may decide whether a defendant is guilty of attempted murder, you must decide whether he is guilty of shooting at an occupied motor vehicle and/or assault with a firearm. To prove that a defendant is guilty of attempted murder, the People must prove that, one, the defendant is guilty of shooting at an occupied motor vehicle and [*sic*] assault with a firearm; two, during the commission of shooting at an occupied motor vehicle and/or assault with a firearm, a coparticipant in that shooting at [an] occupied motor vehicle and/or assault with a firearm committed the crime of attempted murder; and, three, under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the attempted murder was a natural and probable consequence of the commission of the shooting at [an]

8

occupied motor vehicle and/or assault with a firearm. A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator. . . . The People are alleging that the defendant originally intended to aid and abet shooting at an occupied motor vehicle and/or assault with a firearm. If you decide that the defendant aided and abetted one of these crimes and that attempted murder was a natural and probable consequence of that crime, the defendant is guilty of attempted murder."

The People acknowledge that the trial court instructed on the natural and probable consequences doctrine and that, under current law, the doctrine is no longer a valid basis for Shaw's attempted murder convictions. They argue Shaw is nevertheless ineligible for relief as a matter of law because the jury's finding the attempted murders were "willful, deliberate, and premeditated shows that it concluded [Shaw] acted with malice," i.e., with "the mental state required for murder and attempted murder under current law." According to the People, the court's instruction on deliberation and premeditation, using CALCRIM No. 601, precluded the jury from convicting Shaw "of willful, deliberate, and premeditated attempted murder unless it found he personally acted with malice" and from finding he "premeditated based on the mental state of his codefendant." But under the instructions that's not true.

On attempted murder, the trial court instructed: "The defendants are charged in counts one through four with attempted murder. To prove that the defendant is guilty of attempted murder, the people must prove that, one, the defendant took at least one direct but ineffective step toward

killing another person and, two, the defendant intended to kill that person."[2]

Regarding deliberation and premeditation, the court instructed: "If you find the defendants guilty of attempted murder under counts one through four, you must then decide whether the People have proved the additional allegation that *the attempted murder was done willfully and with deliberation and premeditation* [italics added]. The defendants acted willfully if they intended to kill when they acted. The defendants deliberated if they carefully weighed the considerations for and against their choice and, knowing the consequences, decided to kill. The defendants premeditated if they decided to kill before acting."

Presumably, the People mean to suggest the latter instruction shows the jury found Shaw personally acted with malice because it shows the jury found he personally intended to kill when he acted. (See *People v. Gonzalez* (2012) 54 Cal.4th 643, 653 ["Express malice is an intent to kill."].) But the instruction did not require the jury to consider whether Shaw, personally, acted willfully and with deliberation and premeditation. Rather, the instruction told jurors to decide whether the People had proven "*the attempted murder was done* willfully and with deliberation and premeditation" (italics added). The rest of the instruction referred to "[t]he defendants," in the plural, without directing the jury to consider either individual defendant's state of mind. It is possible, as the People suggest, some jurors would have understood this use of "defendants" to require them to determine whether *both* defendants acted with an intent to kill. But particularly given that the instruction's

---

[2] The People do not argue this instruction establishes the jury found Shaw, personally, intended to kill.

first sentence directed jurors to consider only whether the crime—without regard to either defendant—"was done" willfully and with deliberation and premeditation, use of "defendants" in the remaining sentences reasonably allowed, if not invited, jurors to consider the defendants collectively in determining whether the requisite mental state was present. Thus, contrary to the People's assertion, the instruction did not prohibit the jury from finding Emanuel, in committing the attempted murder, acted willfully and with deliberation and premeditation and then imputing that mental state to Shaw.

In fact, there is some indication in the record the jury did exactly that. During deliberations, the jury submitted a written question to the court: "If Irvin Shaw became aware of the shooting after the fact and drove away and did not call the police[,] is that aiding and abetting an attempted murder[?]" If the jury believed Shaw, in committing attempted murder, acted willfully and with deliberation and premeditation, it is hard to see why the jury would ask a question that assumed Shaw learned of the shooting only after it occurred.

Nor did the prosecutor, in closing argument, suggest the jurors had to determine whether Shaw, personally, acted willfully and with deliberation and premeditation in committing attempted murder. To the contrary, echoing the passive construction in the first sentence of the instruction on deliberation and premeditation, the prosecutor reminded jurors that "[i]t is alleged that each count of attempted murder was willful, deliberate, and premeditated" and that they were required to find whether "'the attempted murder was willful, deliberate, and premeditated.'"

To summarize, then: The instruction on the natural and probable consequences doctrine permitted the jury to find that Shaw aided and abetted the crime of shooting at an occupied

11

vehicle or assault with a firearm (for which crime Emanuel was the perpetrator), that attempted murder was a natural and probable consequence of that crime, and that therefore Shaw was guilty of attempted murder. The instruction on deliberation and premeditation permitted jurors to find the attempted murder "was done" by Emanuel willfully and with deliberation and premeditation and to impute the malice of that mental state to Shaw. Thus, the jury's finding Shaw's attempted murders were willful, deliberate, and premeditated does not establish he acted with malice and is therefore ineligible for relief under section 1170.95 as a matter of law. Therefore, the superior court's error was not harmless.

## DISPOSITION

The superior court's order denying Shaw's petition under section 1170.95 is reversed. The superior court is to vacate its order denying the petition, appoint counsel for Shaw, issue an order to show cause, and conduct further proceedings in accordance with section 1170.95, subdivision (d).


SEGAL, J.


We concur:


PERLUSS, P. J.             FEUER, J.


12